*O’Neall, J.
The only question argued in this case, and on which it will be necessary to express an opinion, is whether the complainant has entitled himself to relief in this Court. It is understood from the brief and the admissions made in the argument, that Perry had recovered a judgment and sued out an execution at law-, which was levied on the trust property, when an injunction was moved for and obtained by these defendants ; this bill was then filed, and the injunction heretofore obtained by the defendants was dissolved and their bill dismissed. In the meantime the cestui que trust, Tate, went from and without the limits of the State. The' defendants admit that the trust property is the only estate of the cestui que trust, Tate.
Before a creditor seeking relief touching the personal assets of his *230 debtor can come into this Court, he must show not only a judgment and execution, but that he has pursued his execution at law to every available extent. The rule as stated in the case of Brinkerhoff v. Brown, 4 John C. R. 677, seems to me the true one, “to procure relief in Equity by a bill brought'to assist the execution of a judgment at law, the creditor must show that he has proceeded at law to the extent necessary to give him a good title.” Screven v. Bostick, 2 M’C. C. R. 416, Brown v. M’Donald, decided at this Term. Following up the rule laid down in the case of Brinkerhoff v. Brown, Chancellor Kent, in the case of M’Dermutt v. Strong, 4 John C. R. 691, says, “ I regard the law to be clearly settled, that before a judgment creditor can come here for aid against the goods and chattels of his debtor, or against any equitable interest which he may have therein, he must first take out execution and pause it to be levied or returned, so as to show thereby that his remedy at law fqils, and that he has also acquired, by that act of diligence, a legal preference to the debtor’s interest. ” In the case of Spader v. Davis, 5 John. C. R. 280, the plaintiffs had recovered judgments at law, and sued out executions which were returned nulla bona. Chancellor Kent said that “the plaintiffs at the time of filing their bill had acquired, as execution creditors at law, a priority of right valid in Equity, to the trust moneys belonging to the defendant D. and in the hands of the defendant H., *and that payments of the same by H. to D. subsequent to the filing of the bill containing notice of that right and of their claim in pursuance of it, were made in his own wrong.”
From these cases and authorities it is clear that the plaintiff is entitled to the relief which he seeks. He has recovered judgment, sued out execution and levied it on property in which his debtor has the equitable but not the legal estate. This entitles him to the aid of this Court, for he has shown a legal title to the relief sought.
But it is said the party ought to have gone one step farther, and compelled the debtor to assign his interest by ca. sa. This in this case could not have been resorted to, for the debtor had left the State before the injunction was dissolved. I do not think, however, that it is necessary in any case. The party must show an execution returned nulla bona, or levied on the trust property, before he can claim the intervention of the Court of Equity to relieve him touching the personal assets of his debtor. This seems .to furnish a better and higher guard against unnecessary applications to this Court, than an assignment under a ca. sa. would. For an assignment might be forced and obtained, when the debtor’s other funds were amply sufficient to pay the debt. But there can be no necessity for an assignment to entitle a creditor to proceed in equity; the fact that his debtor is in equity regarded as the owner of property, which at law he is not, entitles the creditor to its aid, to make it available in payment of his legal demand. It is not necessary that he should have either legal or equitable title to the property; his debt legally established, and pursued to every available extent at law, entitles him to have the equitable assets of his debtor applied to its payment. I am satisfied that the Chancellor’s decree is correct in principle; but as it may have (unintentionally) charged the trustee personally with the debt of the cestui que trust, from the general words used in the decree, it will be necessary in this respect to modify it.
*231 It is ordered and decreed, that the Chancellor’s decree be so far modified, that it be referred to the Commissioner to ascertain and report what part of the trust estate *in the bill mentioned, belonging to the defendant, J. W. Tate, remains in the hands of the defendant, Wm. Nixon, or was in his hands at any time since the filing of the bill; and that the said Wm. Nixon apply so much thereof, either income or capital, as may be necessary, to the plaintiff’s debt, interest and costs at law; but if the capital should be broken in upon, it can only be for the life of James W. Tate, and if sold, it must be sold for his life only; the purchaser or purchasers to give bond or bonds with good security, for the delivery to the Commissioner of this Court of such of the slaves and their increase, as may be sold to pay the plaintiff’s debts, and which may be alive at the death of James W. Tate. The costs to be paid out of the trust estate.
Johnson and Harper, Js., concurred.